## MICHAEL M. TAYLOR *v.* MORRIS SILVERSTEIN
(AC 27611)

Flynn, C. J., and Gruendel and Berdon, Js.

---

[2] The defendant does not request any type of extraordinary review of this unpreserved claim.

Argued September 5—officially released November 20, 2007

*Morris Silverstein*, pro se, the appellant (defendant).

*Samuel L. Schrager*, for the appellee (substitute plaintiff Michael M. Taylor, trustee).

*Opinion*

FLYNN, C. J. The defendant, Morris Silverstein, appeals from the judgment of the trial court quieting

title to land located on Cider Mill Road in Bolton in favor of the substitute plaintiff, Michael M. Taylor, trustee (plaintiff), and finding against the defendant on his counterclaim. On appeal, the defendant claims that the court improperly (1) concluded that he failed to establish the existence of two easements over the plaintiff's property by either (a) deed or (b) prescription[1] and (2) stated that counts three and four of his counterclaim had been stricken previously. We affirm the judgment of the trial court.

The following facts as found by the court are relevant to our resolution of the issues on appeal. The plaintiff owns a parcel of land on the easterly side of Cider Mill Road, which consists of approximately fifty-six acres and which abuts land owned by the defendant. As stated in the court's memorandum of decision: "The plaintiff acquired title to his parcel as a result of a partition sale order by the Superior Court . . . . After the committee sale was ratified by the Superior Court in August, 2000, the defendant took an appeal to the Appellate Court [see *Mitchell* v. *Silverstein*, 67 Conn. App. 58, 787 A.2d 20 (2001), cert. denied, 259 Conn. 931, 793 A.2d 1085 (2002)], which finally was resolved on March 1, 2004, after his petition for certification to our Supreme Court was denied, as was his motion for reconsideration.

"During the appellate stages, the defendant filed an 'Affidavit and Notice of Continued Use' in the Bolton town clerk's office . . . claiming two rights-of-way from Cider Mill Road to [the defendant's] 5.2 acre parcel [which was] referred to by the defendant as 'Fish's five acres.' The defendant contend[ed] that he [had] two rights-of-way over the plaintiff's property by either or

---

[1] At trial, the defendant also had claimed, as an alternative, that the easements were acquired by necessity. He has not briefed this alternative claim on appeal, and, therefore, we do not address it. We do note, however, that in addressing this claim, the court found that the plaintiff could access his 5.2 acre parcel via other abutting land that he owned.

all of the following: (a) By grant or reservation of deed; (b) By necessity [or] (c) By prescription. The plaintiff [sought] to quiet title [of] the property to himself, claiming that the defendant [could not] establish entitlement to the rights of way under any theory.

"Testimony was proffered by two witnesses. The plaintiff called Attorney Richard Soranno, who was qualified as an expert in land titles, title searches and realty law. Attorney Soranno [had] some thirty-two years of experience in the field and [had] done approximately 5000 title searches for individuals, banks and insurance companies. The defendant was the sole defense witness."

The court opined that "it [was] clear that, unless the defendant [could] prove he [had] rights-of-way as he claim[ed], the plaintiff [was] entitled to have title vested in his favor as a result of the approved partition sale and committee deed." The court went on to conclude that the defendant had not established the existence of the alleged rights-of-way under any theory presented and, therefore, rendered judgment quieting title in favor of the plaintiff. The court also "denied" the defendant's counterclaim, which had sought a "judicial determination recognizing and honoring his rights-of-way . . . ." This appeal followed.

I

The defendant first claims that the court improperly concluded that he did not establish the existence of two easements over the plaintiff's property either by deed or by prescription. We will consider each of these claims in turn.

A

The defendant claims that in reviewing the deeds in both the plaintiff's and the defendant's chains of title, "it is readily apparent that rights-of-way, in the form of

cart paths, were in existence upon the land and being used as of the dates of those instruments [which went back to 1883]."[2] The plaintiff argues that, even if rights-of-way, in the form of cart paths "may" have existed, the defendant failed to establish the actual existence of "rights-of-way over the plaintiff's property that were reserved in deeds [he] submitted, the location of the alleged rights-of-way and, fatally, that [his] land was the dominant estate benefited by alleged rights-of-way . . . ." We agree with the plaintiff.

Initially, we set forth our standard of review. "The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in the light of the surrounding circumstances. . . . On appeal the scope of review of such a question is plenary . . . ." (Citation omitted.) *Carbone* v. *Vigliotti*, 222 Conn. 216, 222, 610 A.2d 565 (1992). "If, after a plenary review, an appellate court concludes that deeded easements exist, their nature and extent usually must be decided by a trial court, and ordinarily a remand is required for a finding of relevant facts to establish their boundaries." *Mandes* v. *Godiksen*, 57 Conn. App. 79, 83, 747 A.2d 47, cert. denied, 253 Conn. 915, 754 A.2d 164 (2000). The question to be determined on appeal is whether there was an intent as expressed in the plaintiff's and the defendant's chains of title to establish the easements. We do this by an examination of the deeds, the map referenced in the plaintiff's deed and the recorded instruments that appear in the chain of title to the particular parcel of land. See id.

At trial, the defendant submitted a warranty deed recorded on January 24, 1911, at volume 18, page 96,

---

[2] The defendant also argues that the court "mistakenly attributed deeds in the plaintiff's chain of title . . . as deeds in the defendant's chain of title." Because we conduct a plenary review of the record as it pertains to the deeds, these alleged factual discrepancies are not critical here.

of the Bolton land records, from William F. Risley to Otto E. Mannel, which is in the plaintiff's chain of title. The deed grants Mannel a certain tract of land in Bolton, which contains twelve acres, and is "bounded North by land of William F. Risley and by land of Mrs. L. J. Robinson,—and by land of William Fish,—East by land of Mrs. L. J. Robinson,—and by land of John L. Risley . . . and by land of Gary D. Carpentier and wife,—and by land of Wm. Fish,—West by land of William Fish— and by Otto E. Mannel's house lot—and by a highway known as 'Bolton Ave.' " The deed goes on to state that "[t]he right is reserved, to those who have a right, to cross and recross in the usual traveled cart paths" and to reserve to William F. Risley "the right, until April 1, 1913, to enter upon—cut and cart away certain wood and timber" from land that is "situated on the North— East—and South of Otto E. Mannel's house lot." The deed also provides: "And furthermore, I, the said grantor do by these presents bind myself and my heirs forever to Warrant and Defend the above granted and bargained premises to him the said grantee his heirs and assigns against all claims and demands whatsoever. Except as is above stated."

The defendant also submitted a deed recorded on April 12, 1911, at volume 18, page 97, of the Bolton land records, from William F. Risley to Mrs. Charlotte Robertson. This deed conveyed a "certain tract of wood-land—containing two acres . . . situated in the town of Bolton . . . starting at a bound at the northwest corner of land I have recently sold to Otto E. Mannel— thence running N. 71½ [degrees], E. 5 [rods] to Mrs. Robertson's southwest bound (by a stump) of land she already owns, bounding this tract on the East—thence running N. 1 [degree], W. 32 [rods] on the East line of her above mentioned land, to a bound on the south line of land of Lewis Fish. Thence turn S. 75 [degrees], W. 15 [rods]—11 [links] along Lewis Fish's south line to a

bound on the East line of a highway. Thence turn southerly on the east line of said highway to the first mentioned bound. There is a cart path crossing the southwest corner of this tract of land—to those who have a right—is reserved the right to use this cart path." "And furthermore, I, the said grantor do by these presents bind myself and my heirs forever to Warrant and Defend the above granted and bargained premises to her the said grantee her heirs and assigns against all claims and demands whatsoever. Except as is above stated."

Although these early deeds in the plaintiff's chain of title, which were submitted by the defendant, state that a right-of-way is "reserved" for those who "may" already possess such a right, neither of these deeds actually conveys or grants a right-of-way to the defendant's predecessor in title, nor do they make any reference as to who had such a right, with the exception of the limited right granted to William F. Risley.[3] Additionally, any mention of the cart path or other right-of-way is absent

---

[3] In 14 R. Powell, Real Property (2007) § 81A.05 [3] [h] [iv], p. 81A-106, it is explained: "The term 'reservation' would be appropriate . . . [where] the grantor is creating the easement in himself or herself. However, for the sake of efficiency, or out of ignorance of the conceptual foundation of a 'reservation,' the grantor may attempt to both convey the land to the grantee and 'reserve' an easement in favor of another person, all in the same deed. Under traditional conveyancing doctrine, such a procedure is impermissible. It notes the fact that the grantor has attempted to reserve an easement in favor of someone other than the grantor himself, and points to the incongruity of that process. The use of the term 'reservation' means that the grantor has kept the interest for himself or herself."

More recent decisions, however, "show a marked tendency toward the rejection of the traditional doctrine. In these cases, the fact that the conveyance grants or reserves an interest in a third person does not automatically invalidate the interest. If the grantor's intent is clear, the interest is properly conveyed to the third person. Some state statutes also require such an interpretation. However, there remain significant decisions which reject this approach and would continue to endorse the rule that a deed may not reserve an interest in favor of a person other than the grantor." Id., pp. 81A-106–107.

from all of the later documents in the plaintiff's chain of title in the record.

The documents submitted by the defendant to demonstrate his chain of title consist of a warranty deed recorded on December 4, 1906, found at volume 18, page 15, of the Bolton land records, from Albert F. Wilson to William L. Fish. The deed sets forth an area containing five acres lying in part to the north of land owned by Risley. The deed also provides that the property is "free from all [en]cumbrances whatsoever except rights of way through said land, if any exist."

The next deed in the defendant's chain of title, recorded on August 1, 1950, at volume 28, page 6, of the Bolton land records, is from Albert E. Fish to Fred G. Boss. That deed states, in part, that the land is bordered "Westerly by land of . . . Silverstein and land formerly of one Robinson, but now Shearer, in part by each, together with rights of way for passage to and from Lake Street over land of said Silverstein and said Shearer and being the same land acquired by me from the Estate of my father William L. Fish." Additionally, the deed also contains a provision that the property is "free from all encumbrances whatsoever, except rights of way through said land if any exist."

Although the defendant argues that the combination of these documents clearly demonstrates the existence of his rights-of-way, we agree with the plaintiff and the court that the documents do not establish the actual existence of any rights-of-way, their location or in whose favor they might lie. Early deeds in the plaintiff's chain of title from 1911 and 1913 set forth the retention of the right to cross the property to whomever might possess such right, without establishing, granting or actually reserving any such right. All subsequent deeds in the plaintiff's chain of title, from 1914 to the time of

trial set forth no recognition, grant or reservation of a right-of-way.

We are presented with a situation in which the August 1, 1950 deed in the defendant's chain of title states there are "rights of way for passage" over the former Silverstein and Shearer properties, but there is nothing in the plaintiff's chain of title that grants such rights-of-way to the defendant's predecessors in title. Although the defendant's 1950 deed states that there are rights-of-way over the Silverstein and Shearer land, the defendant's dominant estate cannot grant rights-of-way over the plaintiff's servient estate, and we find nothing in the plaintiff's chain of title itself that granted or reserved to the defendant's predecessor in title rights-of-way over of the plaintiff's land.

The defendant also argues in his reply brief that if the language in the plaintiff's deeds are considered to be ambiguous because they do not specify to whom the rights-of-way were granted, then the court should have construed such ambiguity in favor of the grantee. Although this may be an accurate statement of the law; see *Lago* v. *Guerrette*, 219 Conn. 262, 268, 592 A.2d 939 (1991) ("[a]ny ambiguity in the instrument creating an easement, in a case of reasonable doubt, will be construed in favor of the grantee" [internal quotation marks omitted]); in this case the defendant first had to prove to the court that a deed actually granted a right-of-way and that he, through his predecessor in title, in fact, succeeded to that interest before he could gain the benefit of such construction. This, he did not do. Accordingly, we agree with the court that the defendant did not provide sufficient proof that any of the deeds in the plaintiff's chain of title granted rights-of-way or that he was the beneficiary of deeded rights-of-way over the plaintiff's property.

B

The defendant next claims that if the deeds do not prove that he has rights-of-way over the plaintiff's property, then he established those rights by prescription. In response to the plaintiff's argument that the defendant clearly demonstrated that the plaintiff's predecessor had acquiesced to the use of these cart paths, the defendant also argues that "[w]hile [the plaintiff's predecessor] allowed Arthur Fish to use the cart paths, she did not give him permission to do so." We are not persuaded.

We review the court's finding that the defendant failed to establish the existence of a prescriptive easement under the clearly erroneous standard of review. *Smith* v. *Muellner*, 283 Conn. 510, 534, 932 A.2d 382 (2007). "When the factual basis of a trial court's decision is challenged, [an appellate court's] function is to determine whether, in light of the pleadings and evidence in the whole record, these findings of fact are clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) Id., 533.

"[A] prescriptive easement is established by proving an open, visible, continuous and uninterrupted use for fifteen years made under a claim of right. . . . The standard of proof that is required is a fair preponderance of the evidence. . . . To establish an easement by prescription it is absolutely essential that the use be adverse. It must be such as to give a right of action in favor of the party against whom it has been exercised.

. . . The use must occur without license or permission and must be unaccompanied by any recognition of [the right of the owner of the servient tenement] to stop such use. . . . Use by express or implied permission or license cannot ripen into an easement by prescription." (Citations omitted; internal quotation marks omitted.) *Boccanfuso* v. *Green*, 91 Conn. App. 296, 309, 880 A.2d 889 (2005).

In the defendant's answer to the plaintiff's complaint, he states that he "does not know if his two [rights-of-way] are aptly described as being 'adverse' to [the] plaintiff's title to land . . . ." In his affidavit, the defendant also attested, in part: "As a youngster growing up on the property, back just prior to and during the World War II era, the undersigned many times witnessed Albert [Fish's] son, Arthur, cutting and hauling wood from the said parcel of land. In order to get to the property, Arthur cleared the [rights-of-way] by cutting roadways through the trees that had fallen across the [rights-of-way] during the 1938 hurricane. The wood Arthur thereby created in clearing his way was left along the side of the [rights-of-way] for . . . use [by the plaintiff's predecessor in title,] so consequently, she did not object to Arthur's doings." Finally, the defendant testified at trial that the plaintiff's predecessor in title knew that the Fishes were cutting down trees along the cart paths, but because they were leaving wood that she used, she did not object.

On the basis of this and other evidence, the court found that the defendant had failed to establish that the use of the cart paths was adverse, under a claim of right, or that the use was open and uninterrupted for more than fifteen years. Although the defendant had argued that the continuous use of these paths and the 1950 deed in his chain of title gave constructive notice of a prescriptive right to use the rights-of-way, the court

found that the use by the Fish family was an approved use.

The defendant, on appeal, does not explain how the court's findings are clearly erroneous. Rather, he merely disagrees with the court's findings and its weighing of the evidence. The defendant admitted in his answer that "adverse" probably was not a proper term to define the Fishes' use of the cart paths, and in his affidavit and in his trial testimony, he admitted that the plaintiff's predecessor in title knew that the Fishes were using the paths and that she did not object to their clearing wood from them because she used the wood that was left behind. As was found by the trial court, this evidence did not demonstrate a use that was adverse to the owner. Accordingly, we conclude that the findings of the court were not clearly erroneous.

## II

The defendant next claims that the court improperly stated that counts three and four of his counterclaim had been stricken previously, and he argues that these counts remain viable, requiring that we remand the case for consideration of these outstanding counterclaims. We disagree.

"[T]he interpretation of pleadings is always a question [of law] for the court . . . . The modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . Although essential allegations may not be supplied by conjecture or remote implication . . . the complaint [or counterclaim] must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded." (Internal quotation marks omitted.) *Bailey* v. *West Hartford*, 100 Conn. App. 805, 809, 921 A.2d 611 (2007). "Although . . . our jurisprudence requires us to interpret pleadings broadly, we [also] must construe

them reasonably to contain all that they mean but not in such a way so as to strain the bounds of rational comprehension." (Internal quotation marks omitted.) *Nazami* v. *Patrons Mutual Ins.* Co., 280 Conn. 619, 629, 910 A.2d 209 (2006).

The defendant's initial answer to the plaintiff's complaint contained a counterclaim that alleged in its entirety: "Defendant seeks cost of suit (including attorney fees), expenses, damages, interest, a reasonable fee for defendant's time, and any and all other amounts the court deems appropriate, as is finally determined, that are or would be due defendant as a result of defendant's involvement in this harassing and totally unnecessary law suit."

In response to this counterclaim, the plaintiff filed a motion to strike on the ground that the counterclaim failed to state a claim on which relief could be granted, arguing that it sounded like the defendant was attempting to plead a cause of action for vexatious litigation but that such a claim was not ripe at this stage. The court granted the motion to strike, without written opinion, on February 29, 2005.

The defendant then filed a new pleading entitled "repleading of counterclaim." The repleaded counterclaim stated in its entirety:

"In accordance with the provisions of Practice Book [§] 10-44, defendant herein repleads his counterclaim.

"First: Defendant seeks a judicial determination recognizing and honoring his [rights-of-way] over plaintiff's subject properties.

"Second: Plaintiff's lawsuit is a frivolous lawsuit. Defendant seeks payment of such statutory amounts that are allowed as damages for bringing such a lawsuit.

"Third: Defendant seeks reimbursement for his expenses involved in this entire mater, including attorney fees, witness fees, expert and specialist fees, interest, and any and all other amounts the court deems appropriate.

"Fourth: Defendant also seeks a reasonable fee for his own time involved in this entire matter, and such other relief that the court deems proper."

On November 3, 2005, the plaintiff filed a request to revise, requesting that the second paragraph of the defendant's counterclaim be revised by removing the paragraph in its entirety. The plaintiff stated that the ground for this requested revision was twofold—first, the second paragraph virtually was identical to the counterclaim that previously had been stricken, and, second, the defendant had pleaded two separate causes of action in one counterclaim, the first being a request for a declaratory judgment and the second being a frivolous lawsuit claim. In response, the defendant filed an objection, which the court overruled, and the second paragraph of the counterclaim thereby was eliminated.

In its memorandum of decision after trial, the court, in part, denied the defendant's request for a declaratory judgment that honored and recognized his rights-of-way, and it stated that "the second, third and fourth counts [of the counterclaim] were previously stricken . . . ." The defendant now claims that the court was incorrect in its statement and that "counts" three and four remain outstanding.[4] Although the court's statement technically may have been incorrect, we do not agree that those remaining paragraphs constitute two additional causes of action.

[4] Although the defendant did file a motion for articulation in which he requested that the court correct parts of its memorandum of decision, he made no request for clarification or correction regarding this statement.

Reviewing the defendant's "repleading of counter-claim" both broadly and realistically, it is apparent that this counterclaim consisted of four separate para-graphs, which contained two causes of action, a request for a declaratory judgment and a vexatious litigation claim, followed by two paragraphs outlining his prayers for relief. After the court overruled the defendant's objection to the plaintiff's request to revise, thereby eliminating the second paragraph of the counterclaim, the counterclaim consisted of a request for a declara-tory judgment recognizing and honoring his rights-of-way, followed by two ancillary paragraphs that set forth his prayers for relief. When the court ruled against the defendant on the remaining counterclaim, no further ruling was necessary on these ancillary paragraphs, as they were not separate causes of action. When the causes of action to which they were ancillary fell, they fell too.

The judgment is affirmed.

In this opinion the other judges concurred.