JOHN M. HERASIMOVICH ET AL. *v.* TOWN
OF WALLINGFORD ET AL.
(AC 31704)

DiPentima, C. J., and Robinson and Bear, Js.

Argued February 10—officially released May 3, 2011

*Vincent T. McManus, Jr.,* for the appellants (plaintiffs).

*Thomas R. Gerarde,* with whom, on the brief, was *Jay T. DonFrancisco,* for the appellee (defendant town of Wallingford).

*Michael F. O'Connor,* for the appellee (defendant Greene-Woronick, Inc.).

*Charlene M. Russo,* for the appellee (defendant Ward Street Church of Christ).

*Opinion*

ROBINSON, J. The plaintiffs, John M. Herasimovich, Martin P. Herasimovich and Rosemary A. Herasimovich, appeal from the judgment of the trial court rendered in favor of the defendants, the town of Wallingford (town), Greene-Woronick, Inc. (Greene-Woronick) and the Ward Street Church of Christ (church), in an action for declaratory and injunctive relief regarding the use of a drainage easement. On appeal, the plaintiffs claim that the court improperly (1) interpreted the language of a deed granting an easement and (2) concluded that the town had acquired the right to maintain a culvert by prescription.[1] We affirm the judgment of the trial court.

The trial court's memorandum of decision sets forth the following relevant facts. On July 5, 1954, Harry B. Bramley, the plaintiffs' predecessor in title, conveyed an easement to the town by deed granting it "the right to drain surface water flowing from the highway known as Broad Swamp Road[2] . . . over and upon" the plaintiffs' property. The easement further stated that "[s]aid right of way begins at a point on the east side of said highway at the location of the present culvert[3] under said highway . . . ." The easement also granted the town the right to install one hundred feet of drainage

---

[1] The plaintiffs also claim that the court improperly concluded that General Statutes § 13a-138a barred their claims against the town. Because we conclude that the plaintiffs cannot succeed on their first two claims, we need not reach their third claim.

[2] In 1979, the town renamed "Broad Swamp Road" "Highland Avenue." For purposes of this appeal, Broad Swamp Road and Highland Avenue are used synonymously.

[3] A culvert is defined as "a transverse drain or waterway . . . ." Webster's Third New International Dictionary 553 (2002).

pipe on the property along with the right to enter the property at any time for the purpose of maintaining the pipe.

"Broad Swamp Road, now Highland Avenue, runs in a generally north/south direction. The plaintiffs' property is on the east side of Highland Avenue. Properties to the north of the plaintiffs' property, on both the east and west side of Highland Avenue, are generally at a higher elevation than the plaintiffs' property.

"The Broad Swamp Road in 1954 was described as an 'uncurbed crowned, tar road.' Water on the west side of the crown of the roadway flowed in a ditch on the west side of the roadway to the culvert that ran under the road opposite the plaintiffs' property. Water on the east side of the crown of the road would naturally flow down the east side of the road until it reached a low point. In 1954, there were no municipal drainage structures such as catch basins along either side of the highway.

"The plaintiffs' parents acquired [the] property shortly after the . . . easement was granted. The . . . property consist[ed] of approximately thirty-five acres of land. Some portions of the property close to Highland Avenue have been used for agricultural purposes by the plaintiffs or their parents. The highest elevations on the plaintiffs' property are adjacent to Highland Avenue. The property slopes down and away from the highway. . . .

"[Greene-Woronick's] property is on the west side of Highland Avenue. [Greene-Woronick] subdivided the parcel to create a residential subdivision which included Shangri Lane. [Greene-Woronick] received approval for this subdivision in 2003. The subdivision has four homes. Three of the four [homes] do not drain toward the plaintiffs' property. One house, plus a portion of Shangri Lane, drains toward Highland Avenue.

All of the property now or formerly owned by [Greene-Woronick] on the west side of Highland Avenue are above the elevation of 270 feet (the elevation of the . . . easement). Upon completion of [Greene-Woronick's] subdivision, Shangri Lane and the drainage structures within the roadway, were deeded to the [town]. These drainage structures discharge into catch basins and drainage pipes maintained along the west side of Highland Avenue by the [town].

"The . . . church acquired property on the west side of Highland Avenue in 2000. The parcel is undeveloped except for a gravel driveway that intersects Highland Avenue south of the . . . easement. This elevated gravel driveway . . . proceeds in a westerly direction from Highland Avenue. This property also has a frontage on Church Street or Route 68. The [church's] predecessor in title . . . had previously subdivided the parcel and sold off a house lot. This house lot was referred to during the trial as either the parsonage or the Baker lot. The Baker lot is served by an elevated driveway proceeding in a westerly direction from Highland Avenue. The Baker lot driveway is located south of the . . . easement and north of the church driveway. The elevations on the Baker [lot] adjacent to the culvert are between 268 and 270 feet.

"The engineering evidence presented during the trial was in general consensus with regard to the watershed served by the culvert that crosses under Highland Avenue onto the plaintiffs' property. The . . . watershed . . . in 1954 was comprised of approximately seventeen acres on the west side of the Highland Avenue.

"Within the watershed were and are the parcels currently owned by the defendants. Also within the watershed are additional parcels of land. The owners of the additional parcels of land, including the Baker [lot], have not been joined as defendants in this action. One

tract to the north of [Greene-Woronick's] parcel was developed in 1984/85 as the Strathmore Farm subdivision. The Strathmore Farm subdivision includes Hayledge Court. Hayledge Court connects to Highland Avenue north of the . . . easement.

"Surface water in the . . . watershed naturally flowed toward the culvert under Highland Avenue adjacent to the plaintiffs' property. This would include water that flowed over and through the land within the watershed or water that flowed along the surface or adjacent to Highland Avenue.

"On the east side of Highland Avenue, as previously described, the plaintiffs' property slopes down and away from Highland Avenue. Properties that abut the plaintiffs' parcel on the north and south are generally at higher elevations than the plaintiffs' parcel. Surface water from such parcels would naturally flow perpendicularly to the topographic elevation lines and toward the plaintiffs' property. As such, in 1954, and at present, the plaintiffs receive some surface and underground drainage from the abutting properties. This drainage is in addition to the flows that come onto the plaintiffs' property from the . . . easement and the precipitation that falls directly on the plaintiffs' property.

\* \* \*

"In 1973, the town installed 780 feet of fifteen inch pipe and five catch basins on the westerly side of Highland Avenue. The southerly most catch basin was connected to the culvert under Highland Avenue to the . . . easement pipe.

"In 1984/85, the drainage system under Hayledge Court was connected to the 1973 municipal drainage system serving Highland Avenue. This was a gravity system. There were no pumps used to move the water within the system. In 1988 the church property was

subdivided. Elevated driveways were created to enter the lots. Culverts were placed underneath these driveways, and they were connected with a catch basin that is not located in a roadway.

"In 1997 the town widened Highland Avenue and added catch basins and curbed the east side of Highland Avenue.

"In 2003, the [Greene-Woronick] subdivision, which included Shangri Lane, was completed. The subdivision included a long forty-eight inch wide pipe under the roadway that ultimately was connected to the catch basin system on Highland Avenue. This is also a gravity system. There were no pumps used to move the water within the system. According to the town's engineering calculations, the large pipe serves as a detention basin and flow out of the pipe is 'metered' so that there is no increase in the rate of runoff.

"It was in late 1988 when the plaintiffs first complained about the amount of water draining on to their property through the . . . easement. The plaintiffs wrote to the town complaining about the amount of water draining through their property and the damage it was causing. In response to the plaintiffs' complaint, the town brought to the plaintiffs' attention the 1954 . . . easement. It was also discovered [at] about this time that the town had installed 240 feet of pipe rather than the 'approximately 100 feet' of pipe allowed by the easement. Shortly after the plaintiffs' complaint, the town removed 140 feet [of] pipe."

On September 9, 2003, the plaintiffs filed the underlying action, alleging various claims against the defendants. The plaintiffs claimed that the town had surcharged and overburdened the easement, created a nuisance and violated certain rights guaranteed by the Connecticut constitution. In addition, the plaintiffs

brought nuisance and trespass claims against Greene-Woronick, alleging that the subdivision of its parcel of land on the west side of Highland Avenue had increased the amount of water flowing over and through their property. The plaintiffs also alleged that the church installed drainage structures on its land in such a way as to drain the water from its property onto the plaintiffs' property, thus creating a continuing trespass and a nuisance. The plaintiffs sought a permanent injunction ordering the defendants to cease draining on their property all drainage not originally contemplated by the easement, an order restraining Greene-Woronick from entering onto the plaintiffs' property or draining any water onto the plaintiffs' property, a declaration that the town unreasonably caused the impairment, pollution and destruction of natural resources in violation of General Statutes § 22a-16, an order requiring the defendants to remove their water drainage structures and attorney's fees pursuant to General Statutes § 22a-18 (e).

The matter was tried to the court and, on October 7, 2009, the court issued its memorandum of decision. In its decision, the court made several conclusions regarding the plaintiffs' claims. First, the court concluded that the plaintiffs had failed to meet their burden of proof to establish their claim that the town had surcharged and overburdened the easement. In reaching this conclusion, the court first attempted to define the scope of the easement by interpreting the language of the deed. The court concluded that the parties intended the term " 'surface water,' " as used in the deed, to include not only water that naturally accumulated on the surface of Highland Avenue by way of precipitation but also water that naturally flowed off of property adjacent to Highland Avenue. After defining the scope of the easement, the court determined that the plaintiffs

failed to establish that the easement had been overburdened. The court also concluded that the plaintiffs failed to meet their burdens of proof to establish their trespass and nuisance claims against Greene-Woronick and the church. Additionally, the court concluded that the town had acquired the right to maintain the culvert underneath Highland Avenue by prescription and that General Statutes § 13a-138a barred all of the plaintiffs' claims directed against the town. This appeal followed.

On appeal, the plaintiffs claim that the court improperly (1) interpreted the language of the deed granting the easement and (2) concluded that the town had acquired the right to maintain the culvert by prescription.

## I

The plaintiffs first claim that the court improperly interpreted the language of the deed granting the easement. Specifically, the plaintiffs claim that the court improperly concluded that the parties intended the term "surface water" to include both precipitation falling on Highland Avenue and water that naturally flows off of property adjacent to Highland Avenue. The plaintiffs argue that the parties intended the meaning of the term "surface water" to be limited solely to precipitation falling on Highland Avenue. We do not agree.

"We begin by setting forth the applicable standard of review. For a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. . . . *The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent.* . . . [T]he determination of the intent behind language in a deed,

considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . In determining the scope of an express easement, the language of the grant is paramount in discerning the parties' intent. In order to resolve ambiguities in the language, however, the situation and circumstances existing at the time the easement was created may also be considered." (Citations omitted; emphasis added; internal quotation marks omitted.) *Leposky* v. *Fenton*, 100 Conn. App. 774, 778, 919 A.2d 533 (2007).

With these principles in mind, we look to the language of the deed. As set out previously, the deed granted the town "the right to drain *surface water* flowing from the highway known as [Highland Avenue] over and upon [the plaintiffs' property] . . . ." (Emphasis added.) Surface water has been defined as "natural water that has not penetrated much below the surface of the ground"; Webster's Third New International Dictionary (2002); and "[w]ater lying on the surface of the earth but not forming part of a watercourse or lake." Black's Law Dictionary (9th Ed. 2009). "Water such as rainfall runoff is ordinarily in this category until it either seeps into the ground or runs into a confined water body. . . . Surface diffuse water is said to run in watersheds or drainage basins." 9 R. Powell, Powell on Real Property (M. Wolf ed. 2011) § 65.02 [2] [c] [iii], p. 65-26. We conclude that the natural and ordinary import of the term "surface water" is broad enough to include the water that naturally flows off of property adjacent to Highland Avenue.

The evidence that was adduced at trial regarding the situation of the property and the surrounding circumstances supports our conclusion that the term "surface water" includes the water that naturally flows off of property adjacent to Highland Avenue. The evidence revealed that, at the time that the easement was granted,

surface water in the watershed naturally flowed from west to east, toward the culvert under Highland Avenue that was adjacent to the plaintiffs' property. The town's expert, George Cotter, testified that surface water flowed overland from the watershed to Highland Avenue, where it was collected. Specifically, Cotter testified that the surface water that reached Highland Avenue "flowed in the gutter line along Highland Avenue down . . . to the culvert that was located on the west side [of the road] . . . ." Moreover, Cotter testified that "[t]he water [in the watershed] flows from the areas upland to the west, *to the highway, and gets there.* The fact that we changed how the water got to the highway is still the water that got to the highway. . . . [A]ll that's been done in a minor sense is they put some of the surface water into a storm drain pipe; that's the change. It's still the water from the highway." (Emphasis added.) The plaintiffs did not present any evidence that indicated that the parties intended the term "surface water" to be limited solely to precipitation falling on Highland Avenue. Accordingly, we conclude that the court properly determined that the parties intended the term "surface water" to include the water that naturally flowed off of property adjacent to Highland Avenue.

## II

The plaintiffs next claim that the court improperly concluded that the town had acquired the right to maintain the culvert by prescription. Specifically, the plaintiffs claim that the record contains no evidence from which the court could have found any of the elements necessary to find an easement by prescription. We disagree.

"When the factual basis of a trial court's decision [regarding the existence of a prescriptive easement] is challenged, our function is to determine whether, in light of the pleadings and evidence in the whole record, these findings of fact are clearly erroneous." (Internal

quotation marks omitted.) *Frech* v. *Piontkowski*, 296 Conn. 43, 54, 994 A.2d 84 (2010). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Taylor* v. *Silverstein*, 104 Conn. App. 468, 477, 934 A.2d 839 (2007), cert. denied, 285 Conn. 910, 940 A.2d 809 (2008).

"To establish an easement by prescription . . . the plaintiff must prove the necessary elements by a preponderance of the evidence. . . . It is well settled that before a use may develop into a prescriptive easement, it must be (1) open and visible, (2) continuous and uninterrupted for fifteen years and (3) engaged in under a claim of right." (Citation omitted.) *Hoffman Fuel Co. of Danbury* v. *Elliott*, 68 Conn. App. 272, 277, 789 A.2d 1149, cert. denied, 260 Conn. 918, 797 A.2d 514 (2002).

In its memorandum of decision, the court concluded that "the clear and convincing evidence in this case leads the court to the conclusion that the town had maintained the culvert in that location since prior to 1954." The court found that the culvert existed in 1954, as evidenced by the deed. The court further found that the grantor was aware of the culvert and did not object to the culvert. In addition, the court found that the town had maintained the culvert continually since at least 1954 and that it had done so in an open and obvious way for more than the required fifteen years, acting under a claim of right. After a thorough review of the record, we conclude that the evidence amply supports the court's finding that the town acquired through prescription the right to maintain the culvert.

The judgment is affirmed.

In this opinion the other judges concurred.