## SCOTT E. HURLBURT *v.* SCOTT D. DEROSA ET AL.
## (AC 33890)

Gruendel, Lavine and Alvord, Js.

*Syllabus*

Argued June 1—officially released August 14, 2012

*Thomas E. Cronan*, for the appellant (plaintiff).

*Alan J. Tyma*, for the appellees (defendants).

*Bridget M. Ciarlo*, for the appellee (named defendant).

*Opinion*

ALVORD, J. This action involves a claimed drainage easement over property owned by the defendants, Scott D. DeRosa, Carl F. DeRosa, Patricia A. DeRosa and Cori DeRosa Quirk. The plaintiff, Scott E. Hurlburt, appeals from the judgment of the trial court rendered after the granting of the defendants' motion for a judgment of dismissal for failure to make out a prima facie case. Specifically, the plaintiff claims that the court (1) misapplied the legal standard required for a dismissal under Practice Book § 15-8[1] and (2) improperly determined that he failed to provide evidence of harm or damage

---

[1] Practice Book § 15-8 provides: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

by the defendants' interference with his right to drain surface waters across their property. We affirm the judgment of the trial court.

In September, 2008, the plaintiff commenced this action against the defendants seeking monetary damages, injunctive relief and a judgment quieting title in the plaintiff with respect to his claimed right to drain surface waters across the defendants' property. The plaintiff's six count complaint alleged intentional obstruction of a drainage easement, negligent obstruction of a drainage easement, nuisance, trespass and breach of warranty covenants. The sixth count, captioned "Quiet Title," alleged that the defendants claimed estates or interests that were adverse to the plaintiff's title.

The plaintiff presented the following evidence at trial, which we view in the light most favorable to him. See *Sullivan* v. *Thorndike*, 104 Conn. App. 297, 299, 934 A.2d 827 (2007), cert. denied, 285 Conn. 907, 908, 942 A.2d 415, 416 (2008). The plaintiff is the owner of property located at 888 Indian Hill Road in Orange, which is described in his 1994 deed of conveyance as lot 123 and a portion of lot 124 as shown on a 1942 revised map of Indian Hill Estates. The legal description of his property includes the following language: "Together with an agreement contained in a deed from Harry B. Cook to Cullen B. Snell, dated July 6, 1937, and recorded in Volume 148, Page 520 of the Orange Land Records." The agreement in the 1937 deed provides: "It is hereby understood and agreed between the parties hereto and their respective heirs and assigns, that within a reasonable time they shall cooperate in opening the natural water course extending over the piece hereby conveyed [lot 133 on the map of Indian Hill Estates] so as to drain any surface water from Lots Nos. 123 and 124 shown on said Map, and in maintaining said water course to so drain said Lots." Lot 133, over which the plaintiff

claims the right to drain surface waters from his property, is now owned by one or more of the defendants and was acquired by warranty deed recorded in May, 2000.[2] The defendants' deed did not reference the drainage rights contained in the 1937 deed.

In 2005, the plaintiff deposited fill on his property to eliminate some of the pitch from the existing swale, and he also raised the elevation at the rear of his yard with stones to create a hole that was approximately one and one-half feet deep (Hurlburt hole). The Hurlburt hole is at the southerly edge of the plaintiff's property and is partially located on the defendants' property. The plaintiff connected gutters from his house to a twelve inch reinforced concrete pipe on his property, and water from that pipe and the plaintiff's modified swale flows into the Hurlburt hole. The water that flows into the Hurlburt hole empties into an underground twelve inch reinforced concrete pipe that goes through the defendants' property. The piping has a life expectancy of between twenty-five and fifty years.

In 2007, the defendants graded the rear yard of lot 133 by depositing between 100 and 200 cubic yards of fill. They wanted to even the level of the yard by filling in the lower areas as they removed weeds and trash from the premises. According to John Paul Garcia, a licensed professional engineer, the defendants' grading operations changed the previously existing topographical conditions that existed in the rear portion of lot 133.

[2] Carl DeRosa, Patricia DeRosa and Cori DeRosa Quirk are the record owners of 900 Indian Hill Road in Orange. Scott DeRosa, Carl DeRosa and Patricia DeRosa are the record owners of 849 Dogburn Road in Orange. Both properties are located to the south of the plaintiff's property. In 2005, a certificate of variance was recorded in the Orange land records for the property at 900 Indian Hill Road. That variance permitted the reapportionment of land between the defendants' two properties. At the time of trial, the defendants had not yet executed deeds effectuating the proposed conveyances. Accordingly, all four defendants remain defendants in this action because one or more of the defendants have an interest in lot 133, which is a portion of 900 Indian Hill Road.

One witness testified that the fill raised the elevation of the rear portion of lot 133 to a point at least two feet higher than the lowest elevation at the rear of the plaintiff's property. The plaintiff testified that the change in topographical conditions caused by the defendants' actions has interfered with the use of his deeded drainage easement and has resulted in an increase of surface waters on his property. The plaintiff presented evidence that on at least two occasions, surface water backed up onto his property.[3]

The plaintiff withdrew his nuisance claim[4] and his request for actual damages during his case-in-chief. He pursued his claim for punitive damages for the obstruction of the drainage easement, injunctive relief to prevent the defendants' future interference with the drainage easement and a judgment quieting title in the plaintiff to the right to drain surface waters across the defendants' property. The plaintiff did not withdraw the counts alleging trespass and breach of warranty covenants. At the close of the plaintiff's case, the defendants orally moved for a judgment of dismissal pursuant to Practice Book § 15-8 for failure to make out a prima facie case. The court heard argument by the parties and ordered them to submit briefs addressed to the defendants' motion for a judgment of dismissal.

---

[3] The trial court summarized the evidence presented as follows: "The plaintiff did have water back up into his yard in the winter months of 2007 during a heavy snow and then freezing rain. In addition, during periods of heavy rain, water from the defendants' property did make its way onto the plaintiff's property, but demonstrative evidence submitted showed that there was water standing on both the plaintiff's and defendants' property without any evidence of substantial or lasting backup."

With respect to the incident in the winter of 2007, the plaintiff testified that water overflowed from the Hurlburt hole onto his property because leaf litter, debris and heavy snow had accumulated, and the frozen snow prevented the water from draining. That was the only occasion the plaintiff could recall that the Hurlburt hole had been filled with water. The problem was quickly resolved when he broke through the ice and snow covering the hole.

[4] Count three of the plaintiff's complaint alleged a private nuisance.

On September 6, 2011, the court issued its memorandum of decision. With respect to the first two counts alleging intentional and negligent obstruction of a drainage easement, the court concluded that the plaintiff failed to make out a prima facie case that he had an easement because there was no evidence that there had been a natural watercourse on the defendants' property. Further, the court stated that even if the plaintiff had submitted sufficient evidence regarding the existence of a natural watercourse, he had not shown irreparable damage or imminent harm from the claimed obstruction of the easement. The plaintiff's trespass count, alleging an increase in the flow of surface waters on his property, failed because there was no evidence of direct injury resulting from the defendants' actions. The third party beneficiary claim, alleging the breach of warranty covenants with respect to the drainage easement, likewise failed because of the lack of evidence to support the existence of a natural watercourse. Finally, the court dismissed the quiet title claim because the plaintiff "failed to present sufficient evidence during his case-in-chief to establish that the defendants acted unreasonably so as to cause any harm or imminent injury to the plaintiff." For those reasons, the court dismissed the five remaining counts of the plaintiff's complaint. This appeal followed.

"The standard for determining whether the plaintiff has made out a prima facie case, under Practice Book § 15-8, is whether the plaintiff put forth sufficient evidence that, *if believed*, would establish a prima facie case, not whether the trier of fact believes it. . . . In testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff

is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846, 863 A.2d 735 (2005). Whether the plaintiff has made out a prima facie case is a question of law, over which our review is plenary. *Cadle Co.* v. *Errato*, 71 Conn. App. 447, 456, 802 A.2d 887, cert. denied, 262 Conn. 918, 812 A.2d 861 (2002).

I

The plaintiff's first claim is that the court misapplied the legal standard required for a judgment of dismissal under Practice Book § 15-8. At oral argument before this court, the plaintiff conceded that the court set forth the proper standard in its memorandum of decision. The plaintiff argues, however, that the court failed to apply the standard that it articulated. He claims that the evidence presented during his case-in-chief was sufficient to satisfy the low threshold for making out a prima facie case.

In reviewing the plaintiff's claim, we must compare the evidence admitted at trial with the allegations of the complaint. With respect to three of the remaining five counts, the plaintiff pleaded that he had the right to drain surface waters[5] over the defendants' property by virtue of a drainage easement created in a 1937 deed. Those three counts alleged intentional obstruction of a drainage easement, negligent obstruction of a drainage easement and third party beneficiary rights arising from the warranty covenants in the chain of title that included

---

[5] "Surface waters are those casual waters which accumulate from natural sources and which have not yet evaporated, been absorbed into the earth, or found their way into a stream or lake." (Internal quotation marks omitted.) *Page Motor Co.* v. *Baker*, 182 Conn. 484, 486, 438 A.2d 739 (1980).

the right to drain in the 1937 deed.[6] The drainage easement, on which all of these claims are based, expressly provides that the parties, and their heirs and assigns, were to "cooperate in opening the *natural water course* extending over [lot 133] so as to drain any surface water from Lots Nos. 123 and 124 . . . and in maintaining said *water course* to so drain said Lots." (Emphasis added.) The court concluded that the plaintiff failed to present sufficient evidence to establish his right to enforce the drainage easement because he failed to present evidence that a natural watercourse was on the defendants' property or had ever been on the defendants' property. Our careful review of the record supports the court's determination.

"We begin by setting forth the applicable standard of review. For a determination of the character and extent of an easement created by deed we must look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. . . . The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . [T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . In determining the scope of an express easement, the language of the grant is paramount in discerning the parties' intent. In order to resolve ambiguities in the language, however, the situation and circumstances existing at the time the easement was created may also be considered." (Internal quotation marks omitted.) *Herasimovich* v. *Wallingford*, 128

---

[6] "Although the third party beneficiary doctrine was originally developed in the law of contracts, [our Supreme Court] has recognized that third party beneficiaries may enforce covenants in land." *Wykeham Rise, LLC* v. *Federer*, 305 Conn. 448, 473, 52 A.3d 702 (2012).

Conn. App. 413, 421–22, 17 A.3d 502, cert. denied, 302 Conn. 919, 28 A.3d 339 (2011).

The clear and unambiguous language in the deed creating the subject easement evidenced the parties' intent that they were to open the natural watercourse *on* lot 133 to permit the surface waters from lots 123 and 124 to drain *into that watercourse*. The surface waters would then drain over lot 133 by way of that watercourse. The watercourse then was to be maintained to insure the continued drainage of those surface waters. The particular method of drainage, i.e., via the watercourse, was expressly stated. Contrary to the plaintiff's argument, the deed did not create a general right to drain surface waters over lot 133; the drainage had to be effectuated through the use of the natural watercourse.[7]

As the trial court determined, there simply was no evidence that the parties to the 1937 deed, or their heirs or assigns, ever opened a natural watercourse on lot 133 to permit the drainage of surface waters from lots 123 and 124. No testimony or exhibits were presented that indicated a watercourse existed on the plaintiff's property or the defendants' property at the time the plaintiff purchased his property in 1994, nor was any evidence submitted that a natural watercourse existed

---

[7] The 1937 deed did not define the term watercourse. As early as 1893, however, our Supreme Court defined a watercourse as follows: "A watercourse consists of bed, banks and water. Yet the water need not flow continually; there are many water-courses which are sometimes dry. To maintain the right to a water-course it must be made to appear that the water usually flows in a certain direction, and by a regular channel, with banks and sides. . . . It may be natural, as where it is made by the natural flow of the water caused by the general superficies of the surrounding land from which the water is collected into one channel . . . . A water-course implies a source, a current and a place of discharge. . . . A water-course as defined in the law means a living stream with definite banks and channel, not necessarily running all the time, but fed from more permanent sources than mere surface water." (Citations omitted; internal quotation marks omitted.) *Chamberlain* v. *Hemingway*, 63 Conn. 1, 5–6, 27 A. 239 (1893).

on the defendants' property at the time of trial or any time prior thereto.[8] Accordingly, the court did not improperly dismiss the first, second and fifth counts of the plaintiff's complaint for failure to make out a prima facie case.

## II

The remaining two counts of the complaint, counts four and six, alleged trespass[9] and sought a declaratory judgment quieting title in the plaintiff with respect to his claimed right to drain surface waters across the defendants' property. Those counts were dismissed by the trial court because the plaintiff failed to present evidence that he had suffered any harm as the result of the defendants' conduct. Although the plaintiff failed to present evidence of his right to enforce the deeded drainage easement, he still could prevail on counts four and six of his complaint if he demonstrated that the defendants discharged or diverted surface waters in such a way as to substantially damage his property. See *Ferri* v. *Pyramid Construction Co.*, 186 Conn. 682, 686, 443 A.2d 478 (1982); *Page Motor Co.* v. *Baker*, 182 Conn. 484, 488, 438 A.2d 739 (1980). Because the plaintiff was seeking injunctive relief rather than actual damages, he was required to present evidence that the defendants' actions caused him irreparable harm and that he lacked

[8] The plaintiff testified only that there was a swale on his property that continued onto the defendants' property. Scott DeRosa testified that there was no natural watercourse that ran through the plaintiff's property or the defendants' property when the defendants purchased their land in 2000. Garcia, the plaintiff's expert witness, testified that there was no existing natural watercourse on the defendants' property when he viewed the property in July, 2008. Further, he testified that he had no information, other than the reference in the 1937 deed, that showed the existence of a natural watercourse or a stream bed on the defendants' property from 1937 forward.

[9] "The essentials of an action for trespass are: (1) ownership or possessory interest in land by the plaintiff; (2) invasion, intrusion or entry by the defendant affecting the plaintiff's exclusive possessory interest; (3) done intentionally; and (4) causing direct injury." (Internal quotation marks omitted.) *Bristol* v. *Tilcon Minerals, Inc.*, 284 Conn. 55, 87, 931 A.2d 237 (2007).

an adequate remedy at law. See *Berin* v. *Olson*, 183 Conn. 337, 340, 439 A.2d 357 (1981). The plaintiff failed to do so.

The trial court noted in its memorandum of decision that "[t]here is no evidence that at any time from the plaintiff's purchase of his property that the 'Hurlburt hole' fully filled up with water or the pipes clogged to substantially interfere with the plaintiff's use and enjoyment of his property. . . . In addition, there is no evidence of damage or harm to the plaintiff's property as a result of water backing up from the defendants' property. . . . There is no evidence that the defendants intentionally caused any surface water to flow onto the plaintiff's property which resulted in damage or harm to the plaintiff's property. The plaintiff's claim at best is anticipatory with no evidence of actual damage or imminent harm." Our review of the record supports the court's determination.

The plaintiff testified that he fears that if he is not able to drain the surface waters freely from his property onto the defendants' property, those waters "eventually" will make their way to the foundation of his house. Although he acknowledged that he never has had water come into his house, he believed that his house and his yard were "in jeopardy." Additionally, the plaintiff expressed concern that because he now has more water flowing onto his property as the result of the defendants' actions, he might experience flooding if the reinforced concrete pipes became clogged or broken.[10] In summary, neither the plaintiff nor any other witness presented evidence that the plaintiff's property had been irreparably harmed or was in danger of imminent

---

[10] Garcia also testified that the plaintiff's property would flood if the pipes were to fail. On cross-examination, however, he conceded that there was nothing to indicate that the pipes were in imminent danger of failing.

harm.[11] Accordingly, the court did not improperly dismiss the fourth and sixth counts of the plaintiff's complaint for failure to make out a prima facie case.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] The plaintiff argues that he presented evidence that the defendants' actions caused more water to flow onto his property and that that fact alone is sufficient to establish the harm necessary to warrant injunctive relief. We disagree. The plaintiff provides no case law in support of this position.