## F.E. CRANDALL DISPOSAL, INC. *v.* TOWN OF LEDYARD ET AL.
## (AC 34030)

Lavine, Robinson and Peters, Js.

Argued December 3, 2012—officially released March 19, 2013

*Simon I. Allentuch*, for the appellant (plaintiff).

*Meredith G. Diette*, with whom, on the brief, was *Melanie E. Dunn*, for the appellees (named defendant et. al).

*John R. FitzGerald*, for the appellee (defendant Sterling Superior Services, Inc.).

### Opinion

ROBINSON, J. In this action alleging fraud, corruption and favoritism in the awarding of a municipal trash and recycling collection contract, the plaintiff, F.E. Crandall Disposal, Inc., appeals from the judgment of

dismissal rendered by the trial court pursuant to Practice Book § 15-8[1] in favor of the defendants, Sterling Superior Services, Inc. (Sterling), the town of Ledyard (town) and Fred B. Allyn, Jr., in his official capacity as the town's mayor. The plaintiff claims on appeal that the court improperly excluded relevant evidence related to the town's prior trash and recycling collection contract and erroneously determined that the plaintiff had failed to make out a prima facie case of fraud, corruption or favoritism affecting the bidding process. We agree with the plaintiff on its evidentiary claim and, accordingly, reverse the court's judgment of dismissal and remand the matter for a new trial.

The following procedural history and facts, as contained in the record before us and viewed in a light most favorable to the plaintiff, are relevant to our consideration of the claims on appeal. See *Thomas* v. *West Haven*, 249 Conn. 385, 392, 734 A.2d 535 (1999), cert. denied, 528 U.S. 1187, 120 S. Ct. 1239, 146 L. Ed. 2d 99 (2000); *Hurlburt* v. *DeRosa*, 137 Conn. App. 463, 465, 49 A.3d 249 (2012). The plaintiff is in the business of collecting and disposing of trash and recyclables for municipalities and other governmental and business entities. With the exception of a single two year period, the plaintiff collected garbage and, later, recyclables for the town from 1990 until 2007. The plaintiff performed in accordance with the terms of its contracts with the town with few complaints. Frank Crandall, the plaintiff's president, was a political opponent of Allyn's, having campaigned against him as a potential mayoral

---

[1] Practice Book § 15-8 provides in relevant part: "If, on the trial of any issue of fact in a civil matter tried to the court, the plaintiff has produced evidence and rested, a defendant may move for judgment of dismissal, and the judicial authority may grant such motion if the plaintiff has failed to make out a prima facie case. The defendant may offer evidence in the event the motion is not granted, without having reserved the right to do so and to the same extent as if the motion had not been made."

candidate in 2007. Crandall also had had negative inter-actions in the past with the town's engineer and public works director, Steven Masalin.

The town's established practice with regard to the curbside collection of trash and recyclables has been to award a two year contract with an option for a two year extension. Generally, the town has exercised that option, effectively resulting in a four year contract for the company successful in the public bidding process. In 2007, Sterling, a business competitor of the plaintiff, successfully secured the trash and recycling collection contract put to bid by the town for the years 2007 through 2011 (2007 contract).[2] The plaintiff also had submitted a bid for that contract, but Sterling's bid was the lowest.

In February, 2011, the town issued a request for bids for the trash and recycling collection contract for 2011 through 2015 (2011 contract). According to the invitation to bid, the town would award the contract "to the lowest responsible bidder, provided that the bid [was] reasonable, and provided that it [was] in the best interest of the [town] to accept such bid, and subject to any choice by the [town] as to any alternate specifications as may be agreed upon." The bidding instructions similarly provided that the town would award the contract "to the lowest responsible, qualified bidder, provided that funds are available." Both the plaintiff and Sterling submitted bid packages. The plaintiff's total bid for the four year contract was the lowest at $1,892,200, which was more than $200,000, or approximately 10 percent, lower than Sterling's bid of $2,100,703.87, the second lowest bid.[3] The contract nevertheless was awarded to Sterling.

---

[2] The contract year starts on the first of July and runs through the end of the following June; thus, a four year contract covers parts of five different calendar years.

[3] The only other bid considered by the town was for $2,107,000 by M. J. Sawchuck, Inc.

The town's "point person" with regard to putting the trash and recycling collection contract out for bid was Masalin. Masalin also provided "historical information" to the ad hoc review committee tasked with selecting the appropriate contractor (committee).[4] Masalin was a member of the committee, as was Allyn, and participated in the committee's deliberations. Masalin issued a memo to the committee that implied that, despite the plaintiff's low bid, the town could realize a savings of as much as $350,000 in incinerator fees over the course of the upcoming four year contract period if it retained Sterling as its garbage collector instead of awarding the contract to the plaintiff. Masalin rendered that opinion on the basis of a comparison of the amount of garbage delivered to the incinerator during the last years that the plaintiff held the town's contract with the amount delivered to the incinerator by Sterling under the 2007 contract. According to Masalin's analysis, even taking into consideration an overall reduction in the amount of trash produced because of the recent economic downturn, there remained about a 12 percent decrease that he attributed to "other contract performance factors." Masalin did not include in his analysis, however, that the 2007 contract awarded to Sterling had adopted a new provision requiring, for the first time, the use of single stream recycling containers or that, as Allyn had reported to the town council, the resulting improvements in recycling efforts likely also were a major factor in the incinerator fee reductions realized by Sterling. The committee recommended to the town council that it select Sterling largely on the basis of those anticipated savings, and the contract thereafter was awarded to Sterling.

---

[4] The "historical information" provided by Masalin included the time frames that different contractors had held the town's trash and recycling contract, the costs associated with those contracts, the amount of garbage delivered to the regional incinerator for which the town incurred a per ton fee, other information related to matters of contract performance, bulky waste issues and data on back-charging violations at the incinerator.

The plaintiff, believing that it had been the lowest qualified bidder and, thus, was entitled to the 2011 contract, filed this action against the defendants. The complaint contained two counts. The first count sought a temporary and a permanent injunction requiring the town to halt all performance by Sterling under the 2011 contract and to award the 2011 contract to the plaintiff as the lowest qualified bidder. Count two sought a declaratory judgment rendering null and void the 2011 contract awarded to Sterling. In support of its action, the plaintiff alleged that the town had exhibited a history of favoritism toward Sterling. The plaintiff included several specific allegations related to the 2007 contract between the town and Sterling that, according to the plaintiff, evinced a pattern of favoritism that allegedly continued into the awarding of the 2011 contract.[5]

The plaintiff further alleged that in executing the two year option to extend the 2007 contract, Allyn chose to pay Sterling more than what Sterling originally had bid for the extension. According to the plaintiff, that extension was illegal because if the town wanted to pay Sterling more for the two year extension, it was required to put the option out for public bid or to obtain the consent of the town council, neither of which had been done.

Finally, the plaintiff alleged that the town had ignored Sterling's repeated violations related to the bonding provisions in the 2007 contract, which allegedly favored Sterling while putting taxpayers at risk. In sum, the

---

[5] For example, the plaintiff alleged that although the terms of the 2007 contract had required that Sterling deliver bottles and cans to a recycling facility in Groton, Sterling violated that contractual provision by instead taking those recyclables to its own facility, resulting in savings for Sterling that were not passed on to the town. The town allegedly ignored the contractual violation. The town allegedly also discussed the change in the recycling requirements with Sterling, thus allowing Sterling to factor in those savings in formulating its bid.

plaintiff alleged that its low bid for the 2011 contract was rejected, "not in good faith and for the legitimate interests of the [t]own, but rather was the product of favoritism, fraud and/or corruption and/or was otherwise for a purpose that contravened the object and integrity of the competitive bidding statutes and/or process applicable to the bids for the 2011 [b]id [r]equest."

A court trial was conducted beginning on November 2, 2011, and concluding the next day. At trial, the court heard testimony from five witnesses: Crandall, Ralph Fargo, Jr., Sterling's president, Masalin, Allyn and Marcia Hancock, the town's director of finance and member of the committee. When the plaintiff attempted to elicit from Crandall, his first witness, testimony concerning the 2007 contract with Sterling, the town's attorney objected, arguing that any line of questioning regarding the 2007 contract was not relevant because the contract at issue was the 2011 contract. The court sustained the objection, limiting questions to the 2011 contract and the associated bidding process.[6] Later during Crandall's

[6] The following colloquy occurred at trial:

"[The Plaintiff]: You know, it's highly relevant, Your Honor. The issue in this case is whether [the plaintiff]'s historical actions, and you can see this from the [town]'s papers, disqualified them or meant that they were not an appropriate bidder, even though they were the low bidder. So I think you're going to hear from both sides a lot of history. In addition, I think I'm entitled to present some background information to the [c]ourt.

"The Court: "Well, I'm going to sustain objection at this point. The town hasn't done anything. They are just sitting over there. You may in rebuttal have an opportunity, if those issues are raised by the town, to raise the 2007 situation, if that seems to be relevant to any of the defenses raised by the town. But right now they haven't raised any defenses, so at this point I'm going to sustain that objection."

"[The Town]: Thank you, Your Honor.

"The Court: Let's move on to the 2011 problem.

"[The Plaintiff]: Okay, Your Honor. I will say most of our case is going to end up in rebuttal. Just so I'm clear, Your Honor, is your ruling that anything regarding the 2007 contract should be saved for rebuttal? Because I'm happy to do that. I just—

"The Court: My ruling is that what evidence is presented by the plaintiff in [his case in] chief has to [be related to] the claims made in the complaint which have to do with the 2011 contract."

direct examination, the plaintiff attempted to explain to the court that it was proceeding on the theory that if it could show that Sterling had been afforded special treatment by the town throughout Sterling's performance of the 2007 contract, the court reasonably could infer that the same favoritism continued into and likely corrupted the 2011 bidding process. When the court asked the plaintiff whether it had any legal support for the proposition that it was entitled to show a pattern of favoritism, the plaintiff responded that "there's no case that's saying you can't do it that way."

During his examination of Fargo, the plaintiff attempted to enter into evidence as a full exhibit the bid specifications for the 2007 contract, which again elicited objections by the defendants on the ground of relevancy. The plaintiff claimed that it was attempting to prove that Sterling was not a qualified bidder for the 2011 contract based on its material violations of the 2007 contract, and argued that "when you consider the

---

"[The Plaintiff]: Your Honor, respectfully, I would refer you to—on the complaint to—I mean most of the complaint or a good part of the complaint is about the events that occurred before this contract. I can cite—I mean just look at page two, starting the 2007 curbside collection contract there's a whole section. Most of the complaint—as I said, most of the facts in dispute are historical but for the—what led up to this contract. Again, I'm happy to put it in our case in rebuttal, but it's almost all the events that led up to the bidding.

"The Court: It seems to me that in order to be relevant to the case, it has to be either responsive to the defenses which are being interposed by the defendants or related to the claim that's made about the 2011 bid process. The 2011 bid process is the issue before the court. And the request that's been made in the end of your complaint, the claims for relief, relate to the 2011 contract process. That's what the issue is. The other matters may or may not become relevant, depending upon what the defenses are interposed by the town as to why they didn't give the low bidder the contract.

"[The Plaintiff]: Your Honor, I would just note for the record that the plaintiff's contention is that there's a history of fraud, favoritism—fraud or favoritism, and we will save that testimony for rebuttal and then move very quickly through our case.

"The Court: Thank you."

fact that the town chose a bidder who bid 10 percent more, it's certainly circumstantial evidence of fraud, favoritism and corruption, especially if that bidder is not qualified." The defendants argued that the 2007 contract had expired and that whatever happened with regard to the 2007 contract had no materiality to the plaintiff's attempt to set aside the 2011 contract. The court again sustained the defendant's objection. It likewise later sustained the defendants' objections to questions directed to Fargo pertaining to the allegations in the complaint that Sterling had violated the bonding provisions in the 2007 contract Similarly, when the plaintiff later attempted to question Allyn with respect to Sterling's alleged noncompliance with the bonding provisions of the 2007 contract and about the allegations that the town, at Allyn's direction, had paid Sterling more than it had bid for the extension of the 2007 contract, the court continued to sustain the defendants' objections to all questions related to the 2007 contract on relevance grounds.

After the plaintiff rested its case, the defendants moved for dismissal pursuant to Practice Book § 15-8, arguing that the plaintiff had failed to establish a prima facie case of fraud, corruption or favoritism. After hearing argument by all parties, the court issued a brief oral ruling granting a judgment of dismissal. The court stated that it could find "no evidence, direct or circumstantial, of fraud, corruption, or favoritism or evidence that would affect the integrity of the bidding process. At best it seems that the plaintiff has a disagreement as to the appropriateness of the decision which was made by the [town council], and that is not the basis upon which relief could be granted in this case."

The court continued: "Consideration has been given carefully to the citations provided. There doesn't seem to be a disagreement as to what the law is. The law is pretty clear and has been annunciated over and over.

The burden is on the plaintiff to present evidence of fraud, corruption or favoritism or a course of conduct which would adversely affect the integrity of the bidding process. And as I said before, I found no such evidence in this case." This appeal followed.

On appeal, the plaintiff claims that the court committed reversible error when it excluded relevant evidence related to the 2007 contract. We agree. Because we ultimately remand the matter for a new trial, we need not reach the plaintiff's other claim, namely, whether on the basis of the evidence the plaintiff was permitted to present, the court erroneously determined that the plaintiff failed to make out a prima facie case of fraud, corruption or favoritism affecting the bidding process.

We begin by setting forth the legal principles governing our review. To avoid a dismissal pursuant to Practice Book § 15-8, the plaintiff has the evidentiary burden and therefore must "put forth sufficient evidence that, if believed, would establish a prima facie case . . . ." (Emphasis omitted.) *Gambardella* v. *Apple Health Care, Inc.*, 86 Conn. App. 842, 846, 863 A.2d 735 (2005).[7] "It is well established that a trial court has broad discretion in ruling on the admissibility [and relevance] of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether

---

[7] The inquiry is not whether the trier of fact *believes* the evidence presented; rather, "[i]n testing the sufficiency of the evidence, the court compares the evidence with the allegations of the complaint. . . . In order to establish a prima facie case, the proponent must submit evidence which, if credited, is sufficient to establish the fact or facts which it is adduced to prove. . . . [T]he evidence offered by the plaintiff is to be taken as true and interpreted in the light most favorable to [the plaintiff], and every reasonable inference is to be drawn in [the plaintiff's] favor." (Citation omitted; internal quotation marks omitted.) *Gambardella* v. *Apple Health Care, Inc.*, supra, 86 Conn. App. 846.

there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Spiegelmann*, 81 Conn. App. 441, 448, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004). Additionally, "[b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *Dockter* v. *Slowik*, 91 Conn. App. 448, 467–68, 881 A.2d 479, cert. denied, 276 Conn. 919, 888 A.2d 87 (2005).

Although there is no precise test for relevancy, "[r]elevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is irrelevant or too remote if there is such a want of open and visible connection between the evidentiary and principal facts that, all things considered, the former is not worth or safe to be admitted in the proof of the latter. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact even to a slight degree, so long as it is not [unfairly] prejudicial or merely cumulative." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 200–201, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005); see also Conn. Code Evid. § 4-1.

"In the context of competitive bidding, it is well established that an unsuccessful bidder on a state or municipal contract has no contractual right under the common law that would afford standing to challenge the award of a contract. . . . An unsuccessful bidder, therefore, has no legal or equitable right in the contract. Not unlike

any other person whose offer has been rejected, the disappointed bidder has no right to judicial intervention. . . . [S]tate and local competitive bidding laws have not been enacted in order to protect bidders. These laws serve to guard against abuses in the award of contracts such as favoritism, fraud or corruption and are enacted solely for the benefit of the public and in no sense create any rights in those who submit bids." (Citation omitted; internal quotation marks omitted.) *Electrical Contractors, Inc.* v. *Dept. of Education,* 303 Conn. 402, 412, 35 A.3d 188 (2012). Nevertheless, to protect the public's interest in the proper implementation of competitive bidding processes, our Supreme Court has carved out a limited exception whereby "unsuccessful bidders have standing to challenge the award of a public contract where fraud, corruption or acts undermining the objective and integrity of the bidding process existed . . . . [S]uch a suit is brought by one who suffers injury as a result of the illegal activity, but the suit itself is brought in the public interest by one acting essentially as a private attorney general." (Internal quotation marks omitted.) Id., 412–13. Thus, to successfully challenge a town's award of a municipal contract, an unsuccessful bidder must present evidence from which a trier of fact reasonably could conclude that it was more likely than not that the integrity of the competitive bidding process had been compromised.

In the present case, the theory advanced by the plaintiff was that actions by certain town officials and Sterling relative to the 2007 contract amounted to circumstantial evidence that the town impermissibly favored Sterling, and that it was more likely than not that such favoritism infected the integrity of the 2011 bidding process, particularly in light of the fact that the plaintiff, and not Sterling, had submitted the lowest bid for the 2011 contract. "[P]roof of a material fact by inference from circumstantial evidence need not be so

conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact." (Internal quotation marks omitted.) *Curran* v. *Kroll*, 303 Conn. 845, 857, 37 A.3d 700 (2012). The court, however, would not permit the plaintiff to present or to elicit through testimony any evidence to substantiate many of the factual allegations made in its complaint. For example, the plaintiff was not allowed to present evidence that the town had ignored Sterling's violation of certain contractual provisions that had benefited Sterling financially, possibly to the detriment of other future bidders, or that Sterling was paid in excess of the contract price for its extension of the 2007 contract without approval by the town council.

Although not conclusive, the evidence the plaintiff sought to admit, if true, tended to support a finding that Sterling received favorable treatment from the town and thus was relevant to the case before the trial court as it could support a reasonable inference of favoritism affecting the bidding process. Even though the court understandably sought to limit the scope of the plaintiff's inquiry into contracts other than the one directly at issue in this case, we nevertheless conclude that it was a clear abuse of discretion for the court to have foreclosed as it did all documentary and testimonial evidence relative to the 2007 contract.

We further are convinced that the plaintiff has demonstrated harm sufficient to warrant a new trial. As previously stated, the gravamen of the plaintiff's complaint was that there was evidence of a pattern of favoritism, proof of which required examination of the prior dealings between the town and Sterling. The court's erroneous evidentiary rulings sharply curtailed the plaintiff's ability to put on its case-in-chief as pleaded and, at a minimum, likely prevented the plaintiff from putting on

sufficient evidence to survive a Practice Book § 15-8 motion to dismiss.

We cannot and will not speculate about what additional relevant evidence might have come to light and, thus, might have been before the court when it considered the motion to dismiss had the court permitted some inquiry into the 2007 contract. Nevertheless, because the court effectively precluded the plaintiff on relevancy grounds from presenting any evidence related to the 2007 contract between the town and Sterling, we conclude that the erroneous evidentiary rulings likely would have affected the court's decision on the motion to dismiss, and, therefore, the error was harmful.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.