THE MILFORD BANK *v.* PHOENIX CONTRACTING GROUP, INC., ET AL.
(AC 34649)

Gruendel, Robinson and Borden, Js.

520

Argued March 5—officially released June 25, 2013

*James E. Barbara*, self-represented, and *Lina T. Barbara*, self-represented, the appellants (defendants).

*Joseph M. Tobin*, with whom, on the brief, was *Scott Dellaventura*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants, Lina Barbara and James Barbara, appeal from the judgment of the trial court rendered against them for breach of their obligations under commercial guarantees of a $500,000 line of credit extended to Phoenix Contracting Group, Inc.

(Phoenix), by the plaintiff, The Milford Bank.[1] The defendants claim that the court improperly rendered judgment against them for the following reasons: (1) the plaintiff failed to present sufficient evidence of damages; (2) the guarantees executed by the defendants were not enforceable contracts because there was never a meeting of the minds, and, as to the guarantee signed by James Barbara, no consideration was given; (3) the court made improper evidentiary rulings by excluding as hearsay (a) two documentary exhibits and (b) certain testimony by James Barbara regarding representations made to the defendants by a former bank official; and (4) the court improperly interfered with the defendants' ability to try their case by refusing to postpone for a day the second day of trial. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. Lina Barbara was the president of Phoenix, and James Barbara was Phoenix' chief executive officer. On March 13, 2009, the defendants executed a promissory note with the plaintiff on behalf of Phoenix, thereby giving Phoenix access to a $500,000 revolving line of credit. At the time the note was executed, the defendants also each executed a guarantee in which they assumed personal liability for 100 percent of any indebtedness incurred by Phoenix under the note. After Phoenix defaulted on its obligations under the note, the plaintiff demanded repayment in full of all outstanding principal and interest. The defendants failed to repay the plaintiff, and it filed this collection action.

The plaintiff's complaint contained six counts. The first count asserted a breach of contract claim against

---

[1] Phoenix also was a defendant in the action before the trial court, but was defaulted for failure to appear. The court rendered judgment on the default against Phoenix, and it has not appealed from that decision or participated in the present appeal. We refer to the Barbaras collectively as the defendants throughout this opinion and individually by name.

Phoenix on the basis of the note, and the second count asserted an unjust enrichment claim against Phoenix. The third and fourth counts alleged that the defendants breached the terms of their guarantees. The fifth and sixth counts asserted unjust enrichment claims against the defendants. Phoenix was defaulted for failure to appear. The defendants filed appearances on behalf of themselves as self-represented parties. Following a two day trial, the court rendered an oral decision in favor of the plaintiff. It first rendered judgment against Phoenix on the basis of the default in the amount of $530,507.03 plus attorney's fees, costs and postjudgment interest. The court next rendered judgment against the defendants for the same amount, finding that the guarantees they had signed were unambiguous and enforceable. The court rejected the defendants' assertion that they did not understand the guarantees and found that any such assertion "lacks creditability based on [the defendants'] experience, especially Lina Barbara, being an attorney, and [James] Barbara, by his own testimony, being an experienced business man." Thereafter, the defendants filed the present appeal.[2] Additional facts will be set forth as necessary.

I

The defendants first claim that the court improperly rendered judgment against them because the plaintiff

---

[2] With regard to the claims asserted against the defendants, we note that the court only addressed the third and fourth counts of the complaint alleging breach of the guarantee agreements; the court's decision does not address the unjust enrichment counts. Although unresolved counts of a complaint can, in certain circumstances, present a final judgment problem; see *Kelly* v. *New Haven*, 275 Conn. 580, 593–94, 881 A.2d 978 (2005); no such problem exists in the present case because the unresolved unjust enrichment counts presented alternative theories of recovery that the court was not required to address once it had disposed of the complaint on the breach of contract counts. See *Union Trust Co.* v. *Jackson*, 42 Conn. App. 413, 416 n.2, 679 A.2d 421 (1996) (concluding that court's failure to address plaintiff's alternative cause of action for unjust enrichment did not implicate final judgment rule because court resolved breach of contract claim in favor of plaintiff and rendered judgment on complaint).

failed to present sufficient evidence to establish the damages awarded by the court. More specifically, they argue that a computer generated itemization of transactions that the plaintiff submitted into evidence was insufficient to establish damages because it did not include the name of the person who had requested the disbursals of funds from the line of credit or exactly how the monies allegedly were disbursed to Phoenix. We disagree and conclude that the trial court's findings as to damages are supported by sufficient evidence and, thus, are not clearly erroneous.

The following additional facts are relevant to our resolution of the defendants' claim. At trial, the plaintiff presented testimony from John DaRin, a senior vice president with the plaintiff in charge of commercial lending. DaRin testified that he currently was the keeper of the plaintiff's books and records with respect to the line of credit at issue, that he was familiar with those books and records and that all documents associated with the Phoenix line of credit, including computer records, were kept in the ordinary course of business. In addition to the note, guarantees and other loan documents, DaRin was asked to identify and to testify about a computer generated printout that was admitted into evidence as plaintiff's exhibit two. DaRin testified that exhibit two was a schedule reflecting all of the advances and the repayments associated with Phoenix' line of credit. According to DaRin, the schedule showed eight advances totaling $610,000 and seven payments totaling $112,036.51, resulting in a principal balance of $497,963.49. DaRin also testified that the total interest that had accrued on the principal balance was $31,086.43 and that late fees totaled $1457.11, for a grand total owed to the plaintiff as of May 1, 2012, of $530,507.03.

"It is well established that damages are a necessary element for a breach of contract action." *Shah* v. *Cover-It, Inc.*, 86 Conn. App. 71, 74 n.3, 859 A.2d 959 (2004).

"[T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty. . . . Thus, [t]he court must have evidence by which it can calculate the damages, which is not merely subjective or speculative, but which allows for some objective ascertainment of the amount." (Citation omitted; internal quotation marks omitted.) *Duplissie* v. *Devino*, 96 Conn. App. 673, 699, 902 A.2d 30, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006).

The damages awarded by the court track the figures provided in exhibit two and as testified to by DaRin. Such evidence provided a sufficient basis upon which the court could make an objective ascertainment of the amount of damages owed to the plaintiff. Although, on cross-examination, DaRin acknowledged that exhibit two did not specify which of Phoenix' employees were responsible for each of the transactions listed, nor could he identify any such persons from personal knowledge, such testimony did nothing to undermine DaRin's testimony that exhibit two accurately reflected the financial transactions between the plaintiff and Phoenix. Further, the defendants presented no evidence from which the court reasonably could have concluded that the funds at issue had not been disbursed to Phoenix as indicated in exhibit two. Exhibit two and the testimony of DaRin provided sufficient evidence of the debt owed by Phoenix to the plaintiff at the time of trial, and therefore of the amount owed by the defendants as guarantors of Phoenix' debt. See *Silicon Valley Bank* v. *Miracle Faith World Outreach, Inc.*, 140 Conn. App. 827, 835–36, 60 A.3d 343 (properly admitted computer records evidence of defendants' debt at time of trial), cert. denied, 308 Conn. 930, 64 A.3d 119 (2013); *Berkeley Federal Bank &*

*Trust, FSB* v. *Ogalin*, 48 Conn. App. 205, 209, 708 A.2d 620 (same), cert. denied, 244 Conn. 933, 711 A.2d 726 (1998). Because the award of damages is fully supported by the record before us, the trial court's judgment is not clearly erroneous.

## II

The defendants next claim that the court improperly rendered judgment against them based on their guarantees of the note because those guarantees were not enforceable contracts and, thus, could not have formed the basis for the court's determination of liability. They first argue, as to both guarantees, that there was never a "meeting of the minds," and therefore the guarantees are unenforceable. The second argument asserted is that James Barbara's guarantee was unenforceable because he received no consideration for executing it. We reject each of those arguments and conclude that the court's reliance on the guarantees as enforceable contracts was not clearly erroneous.[3]

---

[3] The trial court's decision contains no express finding regarding whether there was a meeting of the minds between the parties regarding the guarantees or whether James Barbara received adequate consideration. Assuming that the defendants' general denial of the allegations of the complaint properly preserved its contract formation issues for trial, we note that the defendants did not file any postjudgment motion or a motion for articulation after filing the appeal to alert the court that it had failed to address those issues in its decision. Generally, we have declined to review on the basis of an inadequate record any claims that either were never presented to or passed on by the trial court with the exception of when plain error or constitutional violations are asserted, neither of which were raised by the defendants in this appeal. See *JCV Investment Group, Inc.* v. *Manjoney*, 56 Conn. App. 320 n.1, 322, 742 A.2d 438 (2000). Nevertheless, because mutual assent and consideration both are necessary elements for the formation of a valid contract, it is implicit in the court's decision to enforce the guarantees against the defendants that the court necessarily found that there was both a meeting of the minds and adequate consideration exchanged. See *Deutsche Bank National Trust Co.* v. *DelMastro*, 133 Conn. App. 669, 680, 38 A.3d 166 (reviewing implicit finding of consideration), cert. denied, 304 Conn. 917, 40 A.3d 783 (2012); *Tsionis* v. *Martens*, 116 Conn. App. 568, 577, 976 A.2d 53 (2009) (reviewing implicit finding of mutual assent). Because the plaintiff has not argued that the defendants' claims are either unpreserved

"The existence of a contract is a question of fact to be determined by the trier on the basis of all of the evidence. . . . On appeal, our review is limited to a determination of whether the trier's findings are clearly erroneous. . . . This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *Fortier* v. *Newington Group, Inc.*, 30 Conn. App. 505, 509, 620 A.2d 1321, cert. denied, 225 Conn. 911, 655 A.2d 823 (1993).

### A

The defendants first argue that both guarantees are unenforceable because there was never a meeting of the minds. In support of that argument, they contend that it was their understanding based on conversations that they had had with a bank official prior to signing the guarantees that their home and other personal assets could not be taken for repayment of the line of credit. We are not persuaded.

"In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. . . . If there has been a misunderstanding between the parties, or a misapprehension by one or both so that their minds have never met, no contract has been

or that the record is inadequate for review, we endeavor to review the claims raised albeit on the basis of the record available to us. See Practice Book §§ 60-5 and 61-10 (appellant has burden to provide adequate record for review).

entered into by them and the court will not make for them a contract which they themselves did not make." (Citations omitted; internal quotation marks omitted.) Id., 510.

Here, the court found that the written terms of the guarantees signed by the defendants were abundantly clear. One such term was that "no representations or agreements of any kind have been made to guarantor which would limit or qualify in any way the terms of this guarantee." The defendants have not challenged that language or indicated any specific other language in the guarantees that would support their claim that there was a misapprehension or a misunderstanding of their agreement to be personally liable for the note they executed on behalf of Phoenix, thereby placing their personal assets in potential jeopardy should Phoenix default on its repayment obligations. Further, the court explicitly found that the defendants' claims that they did not understand the terms of the guarantee were not credible due to the fact that Lina Barbara was a practicing attorney in New York and James Barbara, by his own admission, was an experienced business-man. As the trier of fact, we give great deference to the court's credibility assessments. See *Bender* v. *Bender*, 292 Conn. 696, 728, 975 A.2d 636 (2009). Except for the defendants' bald assertions to the contrary, our careful review of the record reveals nothing that supports the defendants' claim that there was not a "meeting of the minds" as to the guarantees.

B

The defendants' next argument relates only to the guarantee signed by James Barbara. Specifically, they argue that James Barbara received no consideration for executing the guarantee. That argument is also not supported by the record.

"The doctrine of consideration is fundamental in the law of contracts, the general rule being that in the absence of consideration an executory promise is unenforceable." (Internal quotation marks omitted.) *Connecticut National Bank* v. *Voog*, 233 Conn. 352, 366, 659 A.2d 172 (1995). "Consideration consists of a benefit to the party promising, or a loss or detriment to the party to whom the promise is made. . . . Whether an agreement is supported by consideration is a factual inquiry reserved for the trier of fact and subject to review under the clearly erroneous standard. . . . The conclusion drawn from the facts so found, i.e., whether a particular set of facts constitutes consideration in the particular circumstances, is a question of law . . . and, accordingly, is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Willamette Management Associates, Inc.* v. *Palczynski*, 134 Conn. App. 58, 70–71, 38 A.3d 1212 (2012).

"[T]he doctrine of consideration does not require or imply an equal exchange between the contracting parties . . . . The general rule is that, in the absence of fraud or other unconscionable circumstances, a contract will not be rendered unenforceable at the behest of one of the contracting parties merely because of an inadequacy of consideration." (Internal quotation marks omitted.) *Christian* v. *Gouldin*, 72 Conn. App. 14, 23, 804 A.2d 865 (2002). Further, § 88 of the Restatement (Second) of Contracts (1981), which has been cited favorably by our Supreme Court; see *Connecticut Bank & Trust Co.* v. *Wilcox*, 201 Conn. 570, 576, 518 A.2d 928 (1986); provides: "A promise to be surety for the performance of a contractual obligation, made to the obligee, is binding if . . . the promise is in writing and signed by the promisor and recites *a purported consideration* . . . ." (Emphasis added.) 1 Restatement (Second), Contracts § 88 (a) (1981).

Here, the guarantees at issue are in writing, they were signed by the defendants, and they expressly provide that they were executed for "good and valuable consideration." Such purported consideration is sufficient to satisfy the requirements for a binding contract as set forth in § 88 (a) of the Restatement. Absent that provision, there also is evidence that James Barbara received a definite benefit, and thus consideration, for his signing the guarantee. DaRin testified that the plaintiff would not have made the loan to Phoenix without the defendants' personal guarantees of payment and performance. As Phoenix' chief executive officer, James Barbara received financial compensation from Phoenix and thus benefited from Phoenix having access to the line of credit provided by the plaintiff, which allowed Phoenix to conduct business. That benefit, irrespective of its value, also supports the court's implicit finding of adequate consideration for James Barbara's guarantee. In sum, the court's findings of consideration and mutual assent, implicit in its enforcement of the guarantees against the defendants, are fully supported by the record and, therefore, not clearly erroneous. The court properly determined that the guarantees signed by the defendants were enforceable contracts.

### III

The defendants also claim that the court made improper evidentiary rulings at trial by excluding as hearsay (a) two documentary exhibits offered by the defendants and (b) certain testimony by James Barbara concerning alleged representations made to the defendants by a former employee of the plaintiff. We agree with the defendants as to the excluded testimony only, but ultimately conclude that any evidentiary error by the trial court was harmless.

The following additional facts are relevant to the defendants' evidentiary claims. During his cross-examination of DaRin, James Barbara sought to introduce

two documents as full exhibits. The documents were a part of certain discovery responses given to the defendants by the plaintiff a few days prior to trial. The documents were premarked prior to trial as the defendants' exhibits B and C.

James Barbara first tried to admit exhibit B. The plaintiff objected to the admission of exhibit B as a full exhibit on the ground that the statements therein were hearsay. DaRin was asked to identify exhibit B, and he testified that it was a memorandum prepared as part of an approval document by R. Cannon, a credit analyst who worked for the plaintiff. The defendants argued that because Cannon worked for the plaintiff, the statements in the document "would be an admission." We view this as invoking the hearsay exception for admissions of a party opponent. No other exception was proffered. The court sustained the plaintiff's objection without comment and ordered the document marked as an exhibit for identification purposes only.

James Barbara next tried to offer exhibit C, which also immediately drew an objection from the plaintiff. As with exhibit B, the plaintiff argued that exhibit C, which also consisted of a statement by Cannon, was inadmissible as hearsay. James Barbara argued that exhibit C had been prepared by an employee of the plaintiff in the normal course of business, which we view as raising that the document should come in under the business record exception to the hearsay rule. DaRin was not asked any questions concerning exhibit C. The court again sustained the plaintiff's objection and ordered the document marked for identification only.

At the close of the plaintiff's direct examination of James Barbara, the plaintiff asked him to read into the record a provision of the guarantee in which he acknowledged that he had read, understood and agreed with all terms of the guarantee. The plaintiff then asked

James Barbara: "When you signed this guarantee did you understand fully all of the terms and conditions as you agreed to?" He responded: "as they were explained to me, yes." Lina Barbara, in cross-examining James Barbara, asked him to clarify that response. He answered: "Well, at the time we were signing the agreement we were with the vice president of the bank, Mr. Don Kanoff, who was the loan officer in charge of the loan. I specifically asked Mr. Kanoff what this document represented and what was the need for me to sign it. His response to me was . . . "[4] At that point in the response, the plaintiff objected "to anything brought up by Mr. Kanoff" as hearsay. The court sustained the objection. The following colloquy ensued:

"[Lina Barbara]: Your Honor, doesn't the fact that Mr. Kanoff was a representative of the bank, doesn't that constitute an admission on the part of the plaintiff and is therefore admissible?

"[The Court]: Are you making an argument to me?

"[Lina Barbara]: Yes, I am.

"[The Court]: Your argument is overruled."

"[Lina Barbara]: I have no further questions at this time."

Before turning to the specific evidentiary claims raised by the defendants, we first set forth our standard of review and other applicable law. "The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions

---

[4] According to the record, Kanoff was DaRin's predecessor and held the same position with the plaintiff.

of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Hurley* v. *Heart Physicians, P.C.*, 298 Conn. 371, 401–402, 3 A.3d 892 (2010). "To the extent [that] a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. . . . We review the trial court's decision to admit [or exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Citation omitted; internal quotation marks omitted.) *State* v. *Davis*, 298 Conn. 1, 10–11, 1 A.3d 76 (2010).

"Additionally, [b]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result." (Internal quotation marks omitted.) *F.E. Crandall Disposal, Inc.* v. *Ledyard*, 141 Conn. App. 442, 452, 62 A.3d 544 (2013). "[T]he reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558, 567, 903 A.2d 201 (2006).

A

The defendants first argue that the court abused its discretion in sustaining the plaintiff's hearsay objection to the admission of the defendant's exhibits B and C as full exhibits. The defendants do not contest that the documents contained hearsay, but rather contend that

the exhibits fell within the business records exception to the hearsay rule; see General Statutes § 52-180;[5] Conn. Code Evid. § 8-4; and, therefore, should have been admitted. We will not address the claim with respect to exhibit B because the defendants never sought to have exhibit B admitted under the business record exception at trial, only as a party admission. As to exhibit C, we find no error in the court's exclusion of the document.

In response to the plaintiff's objection to the admission of exhibit B, the only argument made by James Barbara was that the document "would be an admission" because Cannon worked for the plaintiff.[6] He never asserted that the document should be admissible under the hearsay exception for business records. "Assigning error to a court's evidentiary rulings on the basis of objections never raised at trial unfairly subjects the court and the opposing party to trial by ambush." (Internal quotation marks omitted.) *State* v. *Jose G.,*

[5] General Statutes § 52-180 provides in relevant part: "(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility. . . ."

[6] "It is an elementary rule of evidence that an admission of a party may be entered into evidence as an exception to the hearsay rule. . . . [S]tatements made out of court by a party-opponent are universally deemed admissible when offered against him . . . so long as they are relevant and material to issues in the case." (Citations omitted; internal quotation marks omitted.) *State* v. *Ferguson,* 260 Conn. 339, 357–58, 796 A.2d 1118 (2002); see also Conn. Code Evid. § 8-3 (1).

290 Conn. 331, 343, 963 A.2d 42 (2009). Because the defendants failed to raise the business record exception to the trial court, we will not review whether the exception applied as to exhibit B.[7]

Turning to exhibit C, on the basis of the limited record before us, we cannot find error in the court's decision to exclude that document. "The business records exception to the rule against the admission of hearsay evidence requires that a certain foundation be laid before admitting the evidence offered. . . . The proponent need not produce as a witness the person who made the record or show that such person is unavailable but must establish that [1] the record was made in the regular course of any business, and [2] that it was the regular course of such business to make such writing or record [3] at the time of such act, transaction, occurrence or event or within a reasonable time thereafter." (Citation omitted; internal quotation marks omitted.)

---

[7] Even were we to conclude that the court erred in not admitting exhibit B, our review of that document reveals that its admission would not have altered the court's decision in this matter and, therefore, any error would have been harmless. The defendants sought to have exhibit B admitted because it allegedly supported their argument that, despite having signed the unconditional guarantees of Phoenix' obligations under the note, their personal assets should be unavailable to meet that obligation. A statement in section three of exhibit B, titled "collateral," provides: "This request will be secured by all business assets." The record reveals, however, that the "request" referred to in exhibit B was Phoenix' request for a line of credit, and thus the statement is proof that the promissory note executed by Phoenix would be secured by Phoenix' business assets. Exhibit B does not implicate the guarantees signed by the defendants and could not reasonably be construed as altering the obligations assumed by the defendants under those guarantees. Further, the defendants' exhibit A, which was admitted without objection and is a summary of the information contained in exhibit B, also contains the statement that the collateral for the loan would be "all business assets." Exhibit B would have amounted to cumulative evidence with regard to the purpose for which the defendants sought it admission. The fact that exhibit B was not admitted neither hindered the defendants from presenting their argument nor would it likely have affected the court's decision ultimately to reject that argument. Any error in not admitting the document would, accordingly, be deemed harmless.

*McCahill* v. *Town & Country Associates, Ltd.*, 185
Conn. 37, 40, 440 A.2d 801 (1981). "To qualify a record
as a business entry, the party offering the evidence must
present a witness who testifies that the three require-
ments have been met." *State* v. *Tillman*, 220 Conn. 487,
506, 600 A.2d 738 (1991), cert. denied, 505 U.S. 1207,
112 S. Ct. 3000, 120 L. Ed. 2d 876 (1992). In the absence
of such a foundation, a court cannot properly admit
evidence pursuant to the exception. *McCahill* v. *Town &
Country Associates, Ltd.*, supra, 40.

Here, the defendants did not ask DaRin any founda-
tional questions as to the proffered exhibit C. When the
plaintiff objected to the admission of exhibit C on the
ground that it contained inadmissible hearsay state-
ments by Cannon, James Barbara argued that the docu-
ment should be admitted under the business record
exception because Cannon already had been identified
by the witness as a bank employee and the proffered
document had been made in the regular course of busi-
ness. The court sustained the objection. James Barbara
made no further arguments as to exhibit C and did not
ask the court for an opportunity to lay the necessary
foundation to support his argument that exhibit C fell
within the business record exception. Absent any argu-
ment that exhibit C was not hearsay, and with no foun-
dation establishing that the document was admissible
under a recognized exception, we find no error in the
court's ruling.[8]

## B

The defendants also argue that the court committed
reversible error by excluding as hearsay any testimony

---

[8] Our review of exhibit C reveals that, like exhibit B, it contains a statement
that the line of credit extended to Phoenix was "secured by all business
assets." That statement, like the similar statements in exhibits A and B,
speaks to the collateral that directly secured the note as executed by Phoe-
nix, and cannot reasonably be interpreted as in any way qualifying the
defendants' personal obligation assumed as a result of the guarantees. Thus
even if the document had been admitted, it would not have changed the

by James Barbara concerning representations allegedly made to the defendants by Kanoff around the time the defendants executed the note and guarantees. The defendants contend that the court should have allowed the testimony under the exception to the hearsay rule for admissions of a party opponent. See footnote 6 of this opinion. We agree, but conclude that the error was harmless.

"In civil as well as in criminal cases, [t]he words and acts of a party-opponent are generally admissible against him under the admission exception [to the hearsay rule]." (Internal quotation marks omitted.) *In re Zoarski*, 227 Conn. 784, 796, 632 A.2d 1114 (1993). Section 8-3 (1) of the Connecticut Code of Evidence provides, in relevant part, that "[a] statement that is being offered against a party and is (A) the party's own statement in either an individual or representative capacity . . . [or] (C) a statement by a person authorized by the party to make a statement concerning the subject . . ." is not excluded by the hearsay rule, even if the declarant is otherwise available as a witness.

DaRin testified at trial that, at the time the note and guarantee were executed, Kanoff was the plaintiff's senior vice president, and that, as part of his responsibilities on behalf of the plaintiff in processing loans, he would meet with borrowers and perspective borrowers. James Barbara sought to testify about statements Kanoff made to him during this process which the defendants believed supported their claim that their personal assets were excluded from the obligation they undertook when they executed their guarantees. Because Kanoff was acting in his capacity as a representative of the plaintiff at the time of the statements, the position he held authorized him to make statements about loans

outcome of the trial, and therefore its exclusion, even if in error, would be deemed harmless.

on behalf of the plaintiff, and the statements purportedly were adverse to the position taken by the plaintiff, James Barbara should have been permitted to testify about his recollection of those statements because they fell within the hearsay exception for admissions of party opponents.

The court's error in excluding the statements on hearsay grounds nevertheless was harmless. A guarantee is a species of contract. *Regency Saving Bank* v. *Westmark Partners*, 59 Conn. App. 160, 164, 756 A.2d 299 (2000). As with any contract, the intent of the parties in making the contract is to be determined by the language of the contract. "We long have held that when the parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed, that the whole engagement of the parties, and the extent and manner of their understanding, was reduced to writing. After this, to permit oral testimony, or prior or contemporaneous conversations, or circumstances, or usages [etc.], in order to learn what was intended, or to contradict what is written, would be dangerous and unjust in the extreme. . . . Although there are exceptions to this rule, we continue to adhere to the general principle that the unambiguous terms of a written contract containing a merger clause may not be varied or contradicted by extrinsic evidence." (Citation omitted; internal quotation marks omitted.) *Tallmadge Brothers, Inc.* v. *Iroquois Gas Transmission Systems, L.P.*, 252 Conn. 479, 502–503, 746 A.2d 1277 (2000).

"In order for the bar against the introduction of extrinsic evidence to apply, the writing at issue must be integrated, that is, it must have been intended by the parties to contain the whole agreement . . . ." (Internal quotation marks omitted.) Id., 503. Here, the guarantee contained such a merger clause. The trial

court expressly found that terms of the guarantee were unambiguous, "abundantly clear" and "speak for themselves." Thus, it is readily apparent that even if James Barbara had been allowed to testify about Kanoff's statements to the defendants prior to their execution of the guarantees, such extrinsic evidence of the intent of the parties could not properly have been considered by the trial court in reaching its decision. Accordingly, any error in its exclusion was harmless, and a new trial is not warranted.

## IV

Finally, the defendants claim that the court improperly interfered with the defendants' ability to try their case when it refused to postpone for one day the second day of trial. We disagree.

The following additional facts are relevant to our resolution of this claim. After returning from the lunch break on the first day of trial, the defendants raised the issue of scheduling. They were informed that court would conclude that day at 3:25 p.m. and resume at 9:45 a.m. the following day. The defendants informed the court that their twenty-three month old daughter would not be in day care on that date and that they had no one who could watch her. The court informed the defendants that they could bring their child to court. They told the court that the child was "in her terrible twos right now," that she would whine and cry a lot and that she likely would be very disruptive. The court responded: "She won't disrupt me." When asked if the plaintiff had any objection, counsel responded in the negative. The defendants did not object to the court's offer or make any further remarks or protestations. They never filed or made a formal request for a continuance. The child came to court the following day. The proceedings went forward without any further objection by the defendants, including any objection that

their daughter's presence was so distracting as to undermine their ability to put on a proper defense.

"Decisions to grant or to deny continuances are very often matters involving judicial economy, docket management or courtroom proceedings and, therefore, are particularly within the province of a trial court. . . . Whether to grant or to deny such motions clearly involves discretion, and a reviewing court should not disturb those decisions, unless there has been an abuse of that discretion, absent a showing that a specific constitutional right would be infringed." (Citation omitted.) *In re Shaquanna M.*, 61 Conn. App. 592, 604, 767 A.2d 155 (2001). Here, the defendants never made a formal motion for a continuance. To the extent that informing the court about their child's day care situation could be construed as a request for a continuance, the court came up with a reasonable solution that allowed the matter to continue forward as scheduled, and the defendants appeared to tacitly agree to that solution; they certainly never voiced any further objections to the plan. Although evident in our review of the transcript are instances in which the daughter's presence at trial caused minor disruptions, we cannot conclude that the court abused its discretion in allowing the case to move forward with the child present, nor have the defendants shown that any specific constitutional right was infringed. Accordingly, we reject the claim that the court committed reversible error by not rescheduling the second day of trial.

The judgment is affirmed.

In this opinion the other judges concurred.